Investor Loan #: ▮▮▮▮▮▮▮▮

After Recording Return To:
IndyMac Mortgage Services, a division of OneWest Bank, FSB
Mailcode: IndyMac-5
2900 Esperanza Crossing
Austin, TX 78758

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"):[1] Jodi Punzi
Lender or Servicer ("Lender"): IndyMac Mortgage Services, a division of OneWest Bank, FSB
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 6/7/2004
Property Address ("Property"): 9 Honey Locust Ln, Eastampton, NJ 08060

Recorded on 6/24/2004 in Book or Liber 9849 at page(s) 841, or Instrument or Document No. 4025923 of the official records of Burlington, New Jersey. If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT 3/09 (rev. 8/09) (page 1 of 9 pages)
Form 3157

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:
    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. I live in the Property as my principal residence, and the Property has not been condemned;
    C. There has been no change in the ownership of the Property since I signed the Loan Documents;
    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:
    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
    B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 10/1/2009 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 10/24/2009.

   A. The new Maturity Date will be: 6/1/2049
   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $248,896.20 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.
   C. $11,571.76 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $237,324.43. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 9/1/2009 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 10/1/2009. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 9/1/2009 | $721.63 | $632.35, may adjust periodically | $1,353.98, may adjust periodically | 10/1/2009 | 60 |
| 6 | 3.000% | 9/1/2014 | $837.62 | May adjust periodically | May adjust periodically | 10/1/2014 | 12 |
| 7 | 4.000% | 9/1/2015 | $959.98 | May adjust periodically | May adjust periodically | 10/1/2015 | 12 |
| 8-40 | 5.000% | 9/1/2016 | $1,087.75 | May adjust periodically | May adjust periodically | 10/1/2016 | 393 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) or the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.
F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.
G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.
H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.
I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.

IndyMac Mortgage Services, a division of OneWest Bank FSB
Lender

By: _____*Kelley Cooper Spencer*_____
       **Kelley Cooper Spencer**
       **Vice President**
       2/22/10
Date

_____*Kelley Cooper Spencer*_____
Mortgage/Electronic Registration
Systems, Inc. - Nominee for Lender
**Kelley Cooper Spencer**
**Vice President**

_____*Jodi Punzi*_____
Jodi Punzi
1/30/10
Date

_____
Date

Notary

_____[Space Below This Line For Acknowledgement]_____

Notary Public
State of New Jersey
Donald Graham
My Appointment Expires
November 11, 2011

## Notary Section

STATE OF NEW JERSEY        )
                           ) ss.: ██████████
COUNTY OF BURLINGTON       )

On the __30th__ day of __Jun_____ in the year __2010__ before me, the undersigned, a Notary Public in and for said State, personally appeared _____
_____,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_[signature]_____
Notary Signature

_Donald Graham_____
Notary Printed Name

Notary Public; State of __New Jersey__
Qualified in the County of __Burlington__
My commission expires: __11/11/11__
Official Seal:

Notary Public
State of New Jersey
Donald Graham
My Appointment Expires
November 11, 2011

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     3/09 (rev 8/09)
Form 3157

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made    5/5/2006    between Jodi Punzi                    & 0                ("Borrower") and *IndyMac Bank, F.S.B.* ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated    6/11/2004    , and recorded on n/a       , in Book or Liber    n/a    , at page(s)    n/a    or as Document or Instrument Number    n/a    , of the Official Records of    Eastampton County    ,    New Jersey [County and State or other jurisdiction] and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", which is located at:    9 Honey Locust Ln Eastampton, NJ. 08060                        the real property described being set forth as follows:

SEE EXHIBIT "A"

Assessor's Parcel No.    n/a

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything on the contrary contained in the Note and Security Instrument):

1. As of    5/5/2006    , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S.    $212,982.01    , consisting of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at a yearly rate of    7.0000%    , from    5/1/2006    . Borrower promises to make monthly payments of principal and interest of U.S.    $1,444.69    , beginning on    6/1/2006    , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of    7.0000%    will remain in effect until principal and interest is paid in full. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may be entitled. If on    7/1/2034    (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

   Borrower will make such payments at: IndyMac Bank, P.O. Box 78826, Phoenix, AZ 85062 or at such other place as Lender may require.

3. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

[Attach Acknowledgment in Accordance with Laws of Jurisdiction]

Lender:
IndyMac Bank, F.S.B.

_____     _____
Date                                                    Yvette Gilmore, Vice President

State of *California*
County of *Los Angeles*

On this_____day of_____, 2006, before me_____, Notary Public, personally appeared     Yvette Gilmore, Vice President     of *IndyMac Bank, F.S.B.*, *formerly IndyMac Inc.*, personally known to me, or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

**WITNESS** my hand and official seal

_____
Signature of Notary Public
(Notary Seal)

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note and Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Nothing in this Agreement shall be understood on construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

Witnessed by:

_Jodi Punzi_  
Print Name -

_Frank M. Punzi Jr. (FP)_  
Print Name -

Executed by:

_Jodi Punzi_     - Borrower

_____ 0     - CoBorrower

State of _New Jersey_  
County of _Eastampton County_

On this_____day of_____, 2006, before me_____, Notary Public, personally appeared     Jodi Punzi     &     0  
personally known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capcity(ies), and that by his/her/their signature(s) on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

**WITNESS** my hand and official seal

_____  
Signature of Notary Public  
(Notary Seal)

# Exhibit "A"

Legal Description for Real Estate and Improvements Located at:
9 Honey Locust Ln , Eastampton, NJ. 08060

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Township of Eastampton, County of Burlington State of New Jersey:

BEGINNING AT A POINT IN THE NORTHEASTERLY LINE OF HONEY LOCUST LANE AT A POINT THEREIN DISTANT 340.64 FEET MEASURED SOUTHERLY ALONG SAID NORTHEASTERLY SIDE LINE OF HONEY LOCUST LANE FROM THE POINT OF COMMENCEMENT OF A TRANSITIONAL CURVE TO THE RIGHT CONNECTING SAID NORTHEASTERLY SIDE LINE OF HONEY LOCUST LANE WITH THE SOUTHERLY SIDE LINE OF WILLOWBROOK WAY ,AND FROM SAID POINT OF BEGINNING RUNNING ;THENCE

(1) NORTH 63 DEGREES 39 MINUTES 55 SECONDS EAST ,196.65 FEET TO A POINT ;THENCE

(2) SOUTH 07 DEGREES 06 MINUTES 13 SECONDS WEST ,71.72 FEET TO A POINT ;THENCE

(3) SOUTH 35 DEGREES 19 MINUTES 56 SECONDS WEST , 30.49 FEET TO A POINT ;THENCE

(4) SOUTH 54 DEGREES 38 MINUTES 50 SECONDS WEST , 150.00 FEET TO A POINT IN THE AFORESAID NORTHEASTERLY SIDE LINE OF HONEY LOCUST LANE ; THENCE

(5) ALONG SAID NORTHEASTERLY SIDE LINE OF HONEY LOCUST LANE , IN A NORTHERLY DIRECTION ON THE ARC OF A CURVE TO THE RIGHT HAVING A RADIUS OF 150.00 FEET , AN ARC DISTANCE OF 101.36 FEET TO THE POINT AND PLACE OF BEGINNING.

BEING KNOWN AS LOT 7, BLOCK 1100.08 ON THE TAX MAP OF THE TOWNSHIP OF EASTAMPTON.
COMMONLY KNOWN AS 9 HONEY LOCUST LANE , EASTAMPTON, NEW JERSEY .

NOTE: Being Lot(s) 7. Block 1100.08, Tax Map of the Township of Eastampton, County of Burlington.

NOTE: Lot and Block shown for informational purposes only.

_____[Space Above This Line For Recording Data]_____

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made   3/19/2008   between Jodi Punzi   &   ("Borrower") and **IndyMac Bank, F.S.B.** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated   6/11/2004  , and recorded on   n/a  , in Book or Liber   n/a  , at page(s)   n/a   or as Document or Instrument Number   n/a  , of the Official Records of   Eastampton Township,   New Jersey   [County and State or other jurisdiction] and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", which is located at:   9 Honey Locust Lane, Eastampton NJ 08060    the real property described being set forth as follows:

SEE EXHIBIT "A"

Assessor's Parcel No.   n/a

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything on the contrary contained in the Note and Security Instrument):

1. As of   3/19/2008  , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S.   $227,776.01  , consisting of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at a yearly rate of   7.0000%  , from   5/1/2008  . Borrower promises to make monthly payments of principal and interest of U.S.   $1,515.40  , beginning on   6/1/2008  , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of   7.0000%   will remain in effect until principal and interest is paid in full. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may be entitled. If on   5/1/2038   (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

   Borrower will make such payments at: IndyMac Bank, P.O. Box 78826, Phoenix, AZ 85062 or at such other place as Lender may require.

3. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note and Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Nothing in this Agreement shall be understood on construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

Witnessed by:

__Jodi Punzi_____     _____
Print Name -                                                    Print Name -

Executed by:

_[signature]_____     _____
Jodi Punzi           - Borrower                              - CoBorrower

State of _New Jersey_
County of _Eastampton Township_

On this_____day of_____, 2008, before me_____, Notary Public, personally appeared           Jodi Punzi              &
personally known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capcity(ies), and that by his/her/their signature(s) on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

**WITNESS** my hand and official seal

_____
Signature of Notary Public
(Notary Seal)

2

[Attach Acknowledgment in Accordance with Laws of Jurisdiction]

Lender:
IndyMac Bank, F.S.B.

_3/22/08_
Date

_V. Lyn Niles_
V. Lyn Niles, Vice President

State of *Texas*
County of *Travis*

On this_____day of_____, 2008, before me_____, Notary Public, personally appeared         V. Lyn Niles, Vice President         of *IndyMac Bank, F.S.B., formerly IndyMac Inc.*, personally known to me, or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

**WITNESS** my hand and official seal

_____
Signature of Notary Public
(Notary Seal)

3

# Exhibit "A"
Legal Description for Real Estate and Improvements Located at:
9 Honey Locust Lane , Eastampton NJ 08060

# MODIFICATION BANKRUPTCY DISCLOSURE RIDER

THIS MODIFICATION BANKRUPTCY DISCLOSURE RIDER, effective 3/19/2008, is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date made by Jodi Punzi & (individually or collectively, "Borrower") and *IndyMac Bank, F.S.B.* ("Lender"), covering the property described in the Loan Modification Agreement located at:
9 Honey Locust Lane . Eastampton NJ 08060

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and Lender covenant and agree as follows:

Borrower represents that Borrower was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Note and Security Instrument. Borrower and Lender acknowledge and agree that the Loan Modification Agreement does not affect the Discharge of the Borrower's personal liability on the debt.

Mortgagor(s):

3/22/08
Date

_____ - Borrower
Jodi Punzi

_____
Date

_____ - Co-Borrower

Lender: IndyMac Bank, F.S.B.

_____
Date

V. Lyn Niles, Vice President